**Jon M. Egan**, OSB 002467
Jegan@eganlegalteam.com
Jon M. Egan, PC
547 Fifth Street
Lake Oswego, OR 97034-3009
Telephone: (503) 697-3427
Fax: (866) 311-5629
Attorney for Plaintiffs

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| DONALD DURLAND and ROBERT FRITCHIE,<br><br>       Plaintiffs,<br><br>  v.<br><br>JESSIE JAMES STRAUB, an individual, and STRAUB CONSTRUCTION LLC, an Oregon limited liability company,<br><br>       Defendants. | Case No. 3:20-cv-00031-IM<br><br>PLAINTIFFS' AMENDED MOTION FOR ENTRY OF JUDGMENT OF DEFAULT |

**TABLE OF CONTENTS**

I.  Introduction ............................................................................................................... 1

II.  Standard ................................................................................................................... 1

III. This court has personal and subject matter jurisdiction ............................................ 2

IV. Plaintiffs have met the procedural requirements for default judgment ...................... 3

V.  The *Eitel* factors support entry of default judgment ................................................. 4

    A. First *Eitel* Factor .................................................................................................. 4

    B. Second and Third *Eitel* Factors ............................................................................ 5

        1.  Claims alleged in the Complaint ..................................................................... 5

            a. Coerced False Time Reports .................................................................. 5

            b. Unpaid Wages ....................................................................................... 9

            c. Wrongful Deductions .......................................................................... 10

            d. Oregon Minimum Wage ....................................................................... 11

            e. Oregon Overtime .................................................................................. 11

            f.  Unpaid Wages Upon Termination ........................................................ 12

            g. Conversion, Money Had and Received (Donald Durland Only) ............. 13

            h. FLSA Minimum Wage ......................................................................... 15

            i.  FLSA Overtime .................................................................................... 16

            j.  Pre-judgment Interest .......................................................................... 17

        2.  Counterclaims against Donald Durland ........................................................ 19

            a. Money Had and Received ...................................................................... 19

            b. Fraud ................................................................................................... 19

            c. Breach of Contract .............................................................................. 19

    C. Fourth *Eitel* Factor ............................................................................................ 20

    D. Fifth *Eitel* Factor ............................................................................................... 21

    E. Sixth *Eitel* Factor .............................................................................................. 22

    F. Seventh *Eitel* Factor .......................................................................................... 22

VI. Terms of the judgment to be entered ...................................................................... 23

    A. Jessie James Straub was the plaintiffs' joint employer. ......................................... 23

    B. The evidence supports plaintiffs' damage calculations ......................................... 28

        1.  Coerced False Time Reports........................................................................... 29

        2.  Unpaid Wages................................................................................................. 29

        3.  Wrongful Deductions ..................................................................................... 31

        4.  Oregon Minimum Wage ................................................................................. 31

        5.  Oregon Overtime ........................................................................................... 32

        6.  Unpaid Wages Upon Termination ................................................................. 33

        7.  Conversion, Money Had and Received ........................................................... 33

        8.  FLSA Minimum Wage ................................................................................... 33

        9.  FLSA Overtime .............................................................................................. 34

        10. Pre-judgment Interest .................................................................................... 34

VII.       Conclusion .......................................................................................................... 35

## TABLE OF AUTHORITIES

**Cases**

*3M Co. v. Phx. Auto. Refinishing Co., Ltd.*, CV 17-00649-RSWL-DTB, 2018 WL 1989536, at *5 (C.D. Cal. Apr. 25, 2018) ........................................................ 21

*Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980) ................................................. 1, 4

*Allstream Bus. US, LLC v. Carrier Network Sols., LLC*, No. 3:20-CV-01970-IM, 2021 WL 3488086, *8 (D. Or. Aug. 9, 2021)............................................................................23

*Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 688, 66 S.Ct. 1187, 1192, 90 L.Ed. 1515 (1946).............................................................................................................23, 28

*Artisan & Truckers Cas. Co. v. Vendors Are We, LLC*, No. 3:21-CV-00208-AC, 2021 WL 5139532, at *2 (D. Or. Aug. 23, 2021)....................................................................... 5

*Boucher v. Shaw*, 572 F.3d 1087 (9th Cir. 2009) ....................................................... 24, 25

*Cejas Commercial Interiors, Inc. v. Torres-Lizama*, 260 Or. App. 87 (2013)............... 27

*Chao v. Telecommunications Support Sys., Inc.*, No. CV 03-625-BR, 2005 WL 906486 (D. Or. Apr. 18, 2005) ....................................................................................................25

*Dinicola v. State*, 246 Or. App. 526 (2011)....................................................................27

*Dole v. Elliot Travel & Tours,* 942 F.2d 962 (6th Cir.1991) ..........................................26

*Dole v. Solid Waste Servs., Inc.,* 733 F.Supp. 895 (E.D.Pa.1989)..................................26

*Donovan v. Agnew*, 712 F.2d 1509 (1st Cir.1983) ..........................................................26

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986) .....................ii, 1, 4, 5, 20, 21, 22

*Elektra Entm't Grp., Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005)............... 21

*Emerging Acquisitions, LLC v. Oracle Installations & Fabricators, LLC*, No. 6:20-cv-00453-MK, 2021 WL 325711, at *2 (D. Or. Feb. 1, 2021)...........................................20

*Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002) ................................. 1

*Garcia v. Pacwest Contracting LLC*, No. 3:12-cv-01930-SI, 2016 WL 526236, at *3 (D. Or. Feb. 9, 2016)............................................................................................................ 5

*Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977) ................................. 1, 4

*Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 81 S.Ct. 933, 6 L.Ed.2d 100 (1961) ........................................................................................................................................24

*Gutierrez Negrete v. Commercial Roofing Sols. Inc.*, No. 3:18-CV-1999-SI, 2020 WL 1249887 (D.Or. Mar. 16, 2020) .....................................................................................25

*Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132 (2d Cir. 1999) .......................................26

Hogan v. Aluminum Lock Shingle Corp., 214 Or. 218, 225 (1958). .............................. 14

*Hugler v. Westside Drywall, Inc.*, No. 3:15-CV-02411-BR, 2017 WL 1027026, at *7 (D. Or. Mar. 14, 2017)........................................................................................................ 15

*Hunter v. Dutch Gold Res., Inc.*, No. 1:11-CV-01450-CL, 2012 WL 3614336, at *4 (D.Or. Aug. 20, 2012) ................................................................................................................17

*In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) ................................................................ 2

*J & J Sports Prods., Inc. v. Cardoze*, No. C 09-05683 WHA, 2010 WL 2757106, at *5 (N.D. Cal. July 9, 2010)...................................................................................................

*Joe Hand Prods. v. Holmes*, No. 2:12-CV-00535-SU, 2015 WL 5144297, at *7 (D. Or. Aug. 31, 2015) ....................................................................................................... 21, 23

*Lambert v. Ackerley*, 180 F.3d 997 (9th Cir. 1999).......................................................23

*Mathis v. Hous. Auth. of Umatilla Cty.*, 242 F. Supp. 2d 777, 789–90 (D. Or. 2002) (so stating)............................................................................................................................ 18

*Moore v. Gulf Atl. Packaging Corp.*, No. 3:16-CV-886-PK, 2016 WL 8231142 (D. Or. Nov. 29, 2016) ...................................................................................................... 27

*Moore v. Telfon Commc'ns Corp.*, 589 F.2d 959, 967 (9th Cir. 1978) .............................. 19

*Mustola v. Toddy,* 253 Or. 658, 663 (1969) (quoting *Restatement (Second) of Torts* § 222A(1) (1965)) .................................................................................................... 13

*Perez v. Oak Grove Cinemas, Inc.*, 68 F. Supp. 3d 1234 (D. Or. 2014) ........................... 25

*Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003) ................................................................................................................. 2, 4

*Rubi v. Dynamic Change Inc.*, No. 3:17-CV-01531-HZ, 2019 WL 720977, at *2 (D. Or. Feb. 20, 2019) .......................................................................................................... 5

*Russell v. U.S. Bank Nat. Ass'n*, 246 Or.App. 74, 80–81 (2011) ..................................... 17

*Rutherford Food Corp. v. McComb,* 331 U.S. 722, 67 S.Ct. 1473, 91 L.Ed. 1772 (1947).24, 27

*Smith Cookie Co. v. Archway Cookies*, No. CV 03-248-HA, 2003 WL 23960710, at *3 (D. Or. Apr. 25, 2003) ................................................................................................ 2

*Smurfit Newsprint Corp.*, 197 Or.App. 648, 674 (2005) ................................................... 17

*Solis v. Velocity Exp., Inc.*, No. 03:09–cv–00864–MO, 2010 WL 2990293 (D.Or. July 26, 2010) ........................................................................................................ 24, 25, 26

*Swift Fin., LLC v. Alabar Constr., Inc.*, No. 2:18-cv-02009-SU, 2019 WL 654343, at *3 (D. Or. Jan. 30, 2019) .............................................................................................. 20

*Swift Fin., LLC*, 2019 WL 654343, at *3; *see also Red Lion Hotels Franchising, Inc. v. Dumon*, No. 2:20-CV-0183-TOR, 2021 WL 1269120, at *3 (E.D. Wash. Apr. 6, 2021)21

*TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987)......................... 1

*U.S. Dep't of Labor v. Cole Enterprises, Inc.*, 62 F.3d 775 (6th Cir. 1995) ...................... 26

*Warner Bros. Home Ent., Inc. v. Slaughter*, No. CV 13–0892–DOC RNB(x), 2013 WL 5890682, at *3 (C.D. Cal. Oct. 30, 2013) ............................................................. 21

*Wells v. Carlson*, 78 Or. App. 536, 542 (1986) ....................................................... 23, 28

## Statutes

28 U.S.C. § 1331 ................................................................................................................. 3

28 U.S.C. § 1367 ................................................................................................................. 3

28 U.S.C. § 1391(b)(2) ....................................................................................................... 3

29 U.S.C. § 201 ................................................................................................................... 3

29 U.S.C. 206 ............................................................................................................... 16, 17

29 U.S.C. 207 ..................................................................................................................... 18

29 U.S.C. 216(b) ............................................................................................... 17, 18, 39, 40

O.R.S. 652.100 ........................................................................................................ 7, 10, 34

O.R.S. 652.120 ................................................................................................................... 10

O.R.S. 652.140 ............................................................................................................. 14, 38

O.R.S. 652.150 ......................................................................................................... 14, 37, 38

O.R.S. 652.610(3) ........................................................................................................ 11, 36

O.R.S. 652.615 ................................................................................................................... 36

O.R.S. 653.025 ................................................................................................................... 37

O.R.S. 653.025(1) .............................................................................................................. 12

O.R.S. 653.055 ............................................................................................................. 37, 38

O.R.S. 653.261 ................................................................................................................... 13

O.R.S. 82.010(1)(a) ..................................................................................................... 19, 40

**Rules**

FRCP 54(c) ............................................................................................ 2, 4

FRCP 55 .................................................................................................. 4

FRCP 55(a) ............................................................................................. 1

**Regulations**

29 C.F.R. § 785.38 ............................................................................... 15

## I. Introduction

Defendants are in default [Dkt. 28–29], and plaintiffs' counsel has been unable to reach defendants to confer under LR 7-1. Plaintiffs file this amended motion for the entry of judgment of default against defendants in order to provide additional evidence and explain in further detail how that evidence supports liability and the calculation of damages for each claim. This motion is supported by the Amended Declarations of Jon M. Egan, Donald Durland, and Robert Fritchie, as well as the Declaration of Michèle Lauzier, all submitted herewith.

## II. Standard

Following the Clerk's entry of default under Federal Rule of Civil Procedure 55(a), the general rule is that "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) (quoting *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)). The court's decision whether to enter a default judgment is discretionary. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). The Ninth Circuit has identified seven factors to guide a district court's consideration of whether to enter a default judgment ("*Eitel* factors"):

(1) the possibility of prejudice to the plaintiff,
(2) the merits of plaintiff's substantive claim,
(3) the sufficiency of the complaint,
(4) the sum of money at stake in the action[,]
(5) the possibility of a dispute concerning material facts[,]
(6) whether the default was due to excusable neglect, and
(7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

Further, an entry of default typically does not establish damages. *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). However, the burden on damages at

**Plaintiffs' Amended motion for entry of judgment of default**          Page 1

step two is relatively lenient, as "plaintiff need prove only that the compensation sought relates to the damages that naturally flow from the injuries pled." *See*, *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003). Under Federal Rule of Civil Procedure 54(c), "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."

## III. This court has personal and subject matter jurisdiction

A district court "has an affirmative duty" to determine whether it has subject matter jurisdiction and personal jurisdiction over the defendant before entering a default judgment. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). The court "may dismiss an action *sua sponte*" where personal jurisdiction does not exist. *Id.* However, it must first give the plaintiff moving for a default judgment the opportunity to show facts supporting the exercise of personal jurisdiction. *Id.* at 712–13.

Plaintiffs have alleged sufficient facts to support the exercise of specific personal jurisdiction in this case. Defendants were Oregon citizens, who employed Oregon citizens in Oregon. *See, e.g.*, Dkt. 2, the Civil Cover Sheet filed by defendants, indicating Oregon citizenship for all parties. Further, "[p]ersonal jurisdiction is proper whenever a party has consented to resolving disputes in a given jurisdiction." *Smith Cookie Co. v. Archway Cookies*, No. CV 03-248-HA, 2003 WL 23960710, at *3 (D. Or. Apr. 25, 2003). Defendants filed an Answer after removal [Dkt. 5], and they did not raise any issues of personal jurisdiction.

The Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 as this action is brought under the FLSA, 29 U.S.C. §§ 201, et seq. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over the claims based on Oregon law, as they are so related to claims within the Court's original jurisdiction that they

**Plaintiffs' Amended motion for entry of judgment of default**          Page 2

form part of the same case or controversy under Article III of the United States Constitution. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because the events giving rise to the claims occurred in this district and judicial division, and both parties are subject to this Court's personal jurisdiction with respect to this suit.

## IV. Plaintiffs have met the procedural requirements for default judgment

Plaintiffs have satisfied the requirements of Local Rule 55 and Federal Rule of Civil Procedure 55. Plaintiffs moved for [Dkt. 26] and received [Dkts. 28–29] entry of default. Defendants are neither minors nor incompetent. Defendants originally appeared via counsel [Dkt. 5], but that counsel withdrew [Dkt. 18]. Since then, the record shows that defendants have been nonresponsive to communications sent to both the mailing address and email provided by previous counsel. *See, e.g.*, Dkts. 21 (returned mail), 22 (noting lack of response to motion to amend), 25 (returned mail), 30 (returned mail), 37 (Declaration indicating attempts to reach defendants, service of default motion on defendants at alternative location discovered in state-court electronic felony records, and subsequent nonresponse of defendants), 40 (returned mail). Defendants have not responded to plaintiffs' amended complaint, motion for default, or original motion for default judgment.

The relief requested is limited to what is demanded in the pleadings. Fed. R. Civ. P. 54(c). The original complaint filed in state court addressed Mr. Durland's damages only, since he was the only listed plaintiff at the time, and his damages were estimated at $250,000. Dkt. 1-1 at p. 1. Mr. Fritchie was added as a plaintiff once it became clear that defendants would not provide sufficient records to establish class or collective certification. Dkt. 19. In addition, plaintiffs asserted in their amended complaint allegations upon information and belief that they did not (and do not) have direct

documentary proof of, but can establish only through just and reasonable inference. However, the requested default judgment does not include any claims or damages that were not sought in the amended complaint. Thus, the remedies requested in the instant motion "are not different from and do not exceed the relief prayed for in the Complaint." *Philip Morris USA Inc. v. Banh*, No. CV 03-4043 GAF (PJWx), 2005 WL 5758392, at *6 (C.D. Cal. Jan. 14, 2005).

## V. The *Eitel* factors support entry of default judgment

Entry of default effects an admission of all well-pleaded allegations of the complaint by the defaulted party. *Geddes v. United Fin. Group,* 559 F.2d 557, 560 (9th Cir.1977). "The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In exercising this discretion, courts in this circuit consider the factors articulated in *Eitel v. McCool*, 782 F.2d 1470 (9th Cir. 1986). The *Eitel* factors are: (1) the possibility of prejudice to plaintiffs; (2) the merits of plaintiffs' substantive claims; (3) the sufficiency of the operative complaint; (4) the sum of money at stake in the litigation; (5) the possibility of dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy favoring decisions on the merits. *Eitel*, 782 F.2d at 1471–72.

Below, plaintiffs discuss each of the *Eitel* factors.

## A. First *Eitel* Factor

The first *Eitel* factor considers whether the plaintiff will suffer prejudice if default judgment is not entered. Given defendants' failure to cooperate in this lawsuit and plaintiffs' lack of alternative avenues of recovery, plaintiffs would suffer prejudice if default judgment is not entered. This factor thus weighs in favor of default judgment on plaintiffs' claims and dismissal of defendants' counterclaims. *See Garcia v. Pacwest*

*Contracting LLC*, No. 3:12-cv-01930-SI, 2016 WL 526236, at \*3 (D. Or. Feb. 9, 2016) (noting lack of "alternative means by which to resolve their present claims" and finding this factor weighed in favor of default judgment); *Rubi v. Dynamic Change Inc.*, No. 3:17-CV-01531-HZ, 2019 WL 720977, at \*2 (D. Or. Feb. 20, 2019) ("Plaintiff would be prejudiced if the motion for default judgment is not granted because he has no other recourse to obtain damages on his claims other than through this action.")

## B. Second and Third *Eitel* Factors

The second and third *Eitel* factors are "(2) the merits of plaintiffs' substantive claims; (3) the sufficiency of the operative complaint." *Eitel, supra,* 782 F.2d at 1471. Courts typically consider the merits of plaintiffs' substantive claims and the sufficiency of the complaint together because of the relatedness of the two inquiries. *See, e.g.*, *Artisan & Truckers Cas. Co. v. Vendors Are We, LLC*, No. 3:21-CV-00208-AC, 2021 WL 5139532, at \*2 (D. Or. Aug. 23, 2021), *report and recommendation adopted* 2021 WL 5138161 (D. Or. Nov. 3, 2021) (so stating). As part of this inquiry, the court must consider whether the allegations in the complaint are sufficient to state a claim that supports the relief sought. *Id.* (citations omitted).

Plaintiffs first address the claims alleged in their Complaint, and then address the counterclaims alleged in defendants' Answer [Dkt. 5].

## 1. Claims alleged in the Complaint

As enumerated below, plaintiffs have properly alleged all of their claims in the operative Complaint [Dkt. 23]. The amounts of damages proven by the records and testimony are laid out in section VI below.

## a. Coerced False Time Reports

Oregon employers are prohibited from coercing their employees to file false time

reports. O.R.S. 652.100. Under that statute, defendants were prohibited from compelling, coercing, or otherwise inducing or attempting to induce an employee to create, file, or sign documents containing information that the employer knows is false related to the hours worked or compensation received by the employee. Despite this prohibition, defendants ordered plaintiff Donald Durland to exclude compensable travel time from his weekly hour reports on behalf of himself and his team members, over Mr. Durland's objection. Amended Declaration of Donald Durland at ¶ 3.

Importantly, coercing false time records is an evil over and above simply failing to pay for all time worked. The leader of the coalition behind the introduction of the bill described this evil as follows:

> In most wage and hour cases, the key facts in dispute are the hours worked by the plaintiff. In theory, it is the obligation of employers to make, keep and share accurate wage records. If this were routinely done, there would be little to dispute in court. Unfortunately, employers who want to cheat as to what they pay workers will often either not keep records or maintain false records justifying what they choose to pay. Then the case turns on the credibility of the workers, themselves, in showing that the employers' records aren't accurate and how many hours they worked. Since workers aren't expected or required to keep their own wage records, at best, this is a daunting challenge. However, all too often we see a particularly pernicious practice. The employer, as a condition of employment or payment of wages, sometimes forces the workers to submit, sign or attest to wage records that misrepresent the hours they have worked. In this situation, workers are put at a terrific disadvantage in that they not only have to dispute the employer's records, they must contest documents that may be in their own hand. ... This practice represents a grievous affront to workers' right to be paid, and, indeed, their dignity in the work place. This represents a wrong above and beyond the loss of wages. At its core is a manifest intent to defraud. Why else would an employer require a worker to report hours falsely? Because it is particularly venal, requiring employees to misreport hours deserves a special remedy. That remedy is provided by HB 3008.

Testimony of D. Michael Dale Before the House Committee on Business and Labor

March 8, 2017 HB 3008 – Forcing Workers to Submit False Time Records.

Plaintiffs have adequately stated a claim under this statute. In their Amended

Complaint, plaintiffs pled as follows:

> 6.
>
> On defendants' specific instruction, plaintiffs and the class members did not include travel time to job sites in their hours worked, when such time was compensable under both state and federal law. They have not been paid for that time, nor for the overtime it causes.
>
> **FIRST CAUSE OF ACTION**
> Coerced False Time Reports
>
> 12.
> All previous paragraphs are incorporated by reference herein.
>
> 13.
> Pursuant to ORS 652.100, STRAUB was prohibited from compelling, coercing, or otherwise inducing or attempting to induce an employee to create, file, or sign documents containing information that the employer knows is false related to the hours worked or compensation received by the employee. Despite this prohibition, STRAUB ordered plaintiffs and the class members not to include compensable travel time in their weekly hour reports.
>
> 14.
> Plaintiffs and the class members are entitled to collect $1,000 per pay period, together with injunctive relief, attorney fees, costs, and disbursements per ORS 652.100(2), as well as pre-judgment interest.

Dkt. 23 at 3, 5–6. Only plaintiff Donald Durland is currently seeking to recover the penalties under this statute. He is the only one who was required to fill out fraudulent time records, and he did so on behalf of all of the employees on his team. Amended Durland Dec. at ¶ 3. Mr. Durland has also supported his allegations with uncontradicted evidence. *Id*.

And the specific pernicious practice that the statute was intended to avoid has indeed come to pass in this case: before default, defendants pled multiple allegations in an affirmative defense and a counterclaim specifically based on their phantom reliance on the time records in Mr. Durland's own hand:

SEVENTH AFFIRMATIVE DEFENSE
(Offset)
49.

In addition to submitting records of hours he never worked, Plaintiff falsified time records of the members of his crew to report hours that they never worked. As a result of Plaintiff's wrongful conduct, delineated above, Defendants are entitled to an offset against any attorneys' fees or other damages it may owe on Plaintiff's claims.

…

58.

Plaintiff submitted hours for processing payroll throughout his employment until he quit employment with Defendants on August 21, 2019. Plaintiff received wages for all hours reported and received overtime pay for all hours he claimed to have worked overtime.

…

60.

On or around September 29, 2018, Plaintiff became a foreman for Defendants. His duties included, but were not limited to, overseeing a construction crew, deciding when his crew started and ended construction each day, approving reported hours by his crew members, and submitting hours on behalf of his crew members for payroll processing.

61.

At all relevant times, Plaintiff submitted for payroll processing the hours worked by the crew members on the construction jobs that he served as foreman. At all relevant times, Plaintiff was overseeing two to five crew members each day and reporting hours worked for all those employees.

62.

The members of Plaintiff's crews received wages for all hours reported as worked by Plaintiff and received overtime pay for all hours claimed to have worked overtime as reported by Plaintiff.

…

SECOND COUNTERCLAIM
(Fraud)
68.

Defendants re-incorporate and re-allege the allegations in Paragraphs 51-67 of the Counterclaims as if fully stated therein.

69.

At all times during employment, Plaintiff represented that he was accurately and properly reporting time and only claiming wages and overtime under legal standards and company policy based on hours actually worked.

70.

Plaintiff intended that Defendants would act upon his representations and, as a consequence, would assume that all payments for overtime and wages were accurate and proper.

…

73.

> Defendants reasonably relied upon the representations of Plaintiff as if they were true, because Plaintiff assured Defendants he was accurately and properly reporting time and only claiming wages and overtime based on hours actually worked.

Answer (Dkt. 5) at pp. 9, 11–14.

Plaintiff Donald Durland is therefore entitled to the civil penalties that the Legislature provided in O.R.S. 652.100.

## b. Unpaid Wages

On each payday, Oregon employers are required to pay their employees all wages due and owing to them. O.R.S. 652.120. Here, plaintiffs have adequately stated a claim for unpaid wages under this statute. In their Amended Complaint, plaintiffs pled as follows:

> 6.
>
> On defendants' specific instruction, plaintiffs and the class members did not include travel time to job sites in their hours worked, when such time was compensable under both state and federal law. They have not been paid for that time, nor for the overtime it causes.
> …
> **SECOND CAUSE OF ACTION**
> Unpaid Wages
> 15.
> All previous paragraphs are incorporated by reference herein.
> 16.
> Pursuant to ORS 652.120, STRAUB was required to pay plaintiffs all wages due, when those wages were due, but willfully failed to do so.
> 17.
> Plaintiffs are entitled to collect the wages due in an amount to be proven at trial, together with attorney fees, costs, and disbursements per ORS 652.200, as well as pre-judgment interest.

Dkt. 23 at 3, 6.

Each plaintiff has therefore adequately pled the right to be paid wages for their uncompensated on-the-job travel time. Amended Declarations of Donald Durland (at ¶¶ 2–7) and Robert Fritchie (at ¶¶ 2–5).

**Plaintiffs' Amended motion for entry of judgment of default**           Page 9

### c. Wrongful Deductions

Oregon law prohibits all deductions from employee wages that are not statutorily enumerated. O.R.S. 652.610(3). There are two types of wrongful deductions at issue in this case. First, defendants made a large deduction from plaintiff Donald Durland's final paycheck based upon a false allegation that he had taken a draw. Second, for a period of time, defendants deducted a portion of the employer's half of the Oregon Workers' Benefit Fund assessment from the employees' wages. That was later paid back, but plaintiffs are entitled to the statutory penalties arising from the wrongful deductions.

In their Amended Complaint, plaintiffs pled the right to wrongful deductions as follows:

> 4.
> STRAUB withheld a paycheck from plaintiff Donald Durland based upon a false allegation that he had taken a draw.
> 5.
> STRAUB on many occasions deducted all or part of the employer's share of Oregon Workers' Benefit Fund assessments from the wages of plaintiffs and the class members, including by failing to reduce the statutory deduction rate when it was changed by the state. Those deductions were all illegal.
> ...
> **THIRD CAUSE OF ACTION**
> Wrongful Deductions
> 18.
> All previous paragraphs are incorporated by reference herein.
> 19.
> Pursuant to ORS 652.610, STRAUB was prohibited from deducting certain amounts from plaintiffs' and the class members' paychecks but willfully did so.
> 20.
> Plaintiffs and the class members are entitled to (for each violation) the greater of $200 statutory damages or actual damages in an amount to be proven at trial, pursuant to ORS 652.615, together with attorney fees, costs, and disbursements, and pre-judgment interest.

Dkt. 23 at 2–3, 6.

Plaintiffs have therefore adequately stated a claim for wrongful deductions.

### d. Oregon Minimum Wage

O.R.S. 653.025(1) requires that employers pay their employees at least the amount of the minimum wage for each hour of work time. Neither Donald Durland nor Robert Fritchie were paid for their travel time, and this nonpayment means that both plaintiffs were paid less than the minimum wage for their work time in a given pay period. In addition, the wrongful deduction for a phantom draw further dropped Mr. Durland below the minimum wage. In their Amended Complaint, plaintiffs pled the minimum-wage violations as follows:

> 4.
> STRAUB withheld a paycheck from plaintiff Donald Durland based upon a false allegation that he had taken a draw.
> ...
> 6.
> On defendants' specific instruction, plaintiffs and the class members did not include travel time to job sites in their hours worked, when such time was compensable under both state and federal law. They have not been paid for that time, nor for the overtime it causes.
> ...
> **FOURTH CAUSE OF ACTION**
> Oregon Minimum Wage
> 21.
> All previous paragraphs are incorporated by reference herein.
> 22.
> Pursuant to ORS 653.025, STRAUB was required to pay plaintiffs and the class members at least the amount of the Oregon minimum wage, when those wages were due, but willfully failed to do so.
> 23.
> Pursuant to ORS 653.055 and 652.150, therefore, plaintiffs and the class members are entitled to the amount of unpaid minimum wages, penalty wages, and attorney fees, costs, and disbursements, and pre-judgment interest.

Dkt. 23 at 2–3, 7.

Plaintiffs therefore adequately pled these minimum-wage violations.

### e. Oregon Overtime

O.R.S. 653.261 and its implementing rules require employers to pay time and a half

for all hours worked in excess of 40 in a given workweek. Because each plaintiff typically worked 40 or more hours each week, the large amounts of unpaid compensable travel hours were almost all overtime hours. In their Amended Complaint, plaintiffs pled the overtime violations as follows:

> 6.
> On defendants' specific instruction, plaintiffs and the class members did not include travel time to job sites in their hours worked, when such time was compensable under both state and federal law. They have not been paid for that time, nor for the overtime it causes.
> …
> **FIFTH CAUSE OF ACTION**
> Oregon Overtime
> 24.
> All previous paragraphs are incorporated by reference herein.
> 25.
> Pursuant to ORS 653.261 and its implementing regulations, STRAUB was required to pay plaintiffs and the class members at least time and a half for all hours worked in excess of 40 in a workweek, when those wages were due, but willfully failed to do so.
> 26.
> Pursuant to ORS 653.055 and 652.150, therefore, plaintiffs and the class members are entitled to the amount of unpaid overtime wages, penalty wages, attorney fees, costs, and disbursements, and pre-judgment interest.

Dkt. 23 at 3, 7.

Plaintiffs have therefore adequately pled their overtime claims.

## f. Unpaid Wages Upon Termination

O.R.S. 652.140(1)–(2) requires employers to pay all earned and unpaid wages to employees within a statutory period following termination of employment. Because defendants have still not paid plaintiffs for the compensable travel time they accrued during their employment, a violation has occurred. O.R.S. 652.150 provides that an employer who willfully fails to make timely payment of all wages due when an employee's employment ceases, as required by O.R.S. 652.140, is subject to a penalty

equal to the employee's wage rate times eight hours per day for the number of days the wages remain unpaid, up to a maximum of thirty days.

In their Amended Complaint, plaintiffs pled as follows:

> 4.
> STRAUB withheld a paycheck from plaintiff Donald Durland based upon a false allegation that he had taken a draw.
> ...
> 6.
> On defendants' specific instruction, plaintiffs and the class members did not include travel time to job sites in their hours worked, when such time was compensable under both state and federal law. They have not been paid for that time, nor for the overtime it causes.
> ...

> **SIXTH CAUSE OF ACTION**
> Unpaid Wages Upon Termination
> 27.
> All previous paragraphs are incorporated by reference herein.
> 28.
> Pursuant to ORS 652.140, STRAUB was required to pay plaintiffs and the class members all earned and unpaid wages by the statutory deadline upon termination of employment but willfully failed to do so.
> 29.
> Plaintiffs and the class members are entitled to collect all wages remaining due, in an amount to be proven at trial, together with attorney fees and costs per ORS 652.200, as well as pre-judgment interest, and the 30 days of statutory penalty wages provided by ORS 652.150.

Dkt. 23 at 2–3, 8.

Plaintiffs have therefore adequately pled this claim.

## g. Conversion, Money Had and Received (Donald Durland Only)

"Conversion is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." *Mustola v. Toddy,* 253 Or. 658, 663 (1969) (quoting *Restatement (Second) of Torts* § 222A(1) (1965)). A claim for money had and received is based on the principle that a person or entity should not be

**Plaintiffs' Amended motion for entry of judgment of default**          Page 13

unjustly enriched at the expense of another. *Hogan v. Aluminum Lock Shingle Corp.,* 214 Or. 218, 225 (1958). For both claims, the basis is defendants' unlawful theft of money from Donald Durland for a draw he never took.

In the Amended Complaint, plaintiff Donald Durland pled as follows:

> 4.
> STRAUB withheld a paycheck from plaintiff Donald Durland based upon a false allegation that he had taken a draw.
> ...

> **SEVENTH CAUSE OF ACTION**
> Conversion
> Donald Durland only
> 30.
> All previous paragraphs are incorporated by reference herein.
> 31.
> By misappropriating the money due to plaintiff Donald Durland based upon a false allegation of a draw, defendants exercised unlawful dominion and control over the property, which completely interfered with the employee's right to control it, so that defendants may justly be required to repay the full value of the property.
> 32.
> Plaintiff Donald Durland is entitled to recover the value of the property tortiously converted, in addition to pre-judgment interest, non-economic damages, and punitive damages.
> **EIGHTH CAUSE OF ACTION**
> Money Had and Received
> Donald Durland only
> 33.
> All previous paragraphs are incorporated by reference herein.
> 34.
> Defendants have failed to pay to plaintiff Donald Durland money to which *ex aequo et bono* he is rightfully entitled, and equity and good conscience demand that his money be returned to him by defendants.
> 35.
> Plaintiff Donald Durland is entitled to the money unlawfully withheld from him, in an amount to be proven at trial, in addition to pre-judgment interest and punitive damages.

Dkt. 23 at 2, 8–9.

Plaintiff Donald Durland has therefore adequately pled these claims.

### h. FLSA Minimum Wage

29 U.S.C. 206 requires that employers pay their employees at least the amount of the federal minimum wage for each hour of work time. Neither Donald Durland nor Robert Fritchie were paid for their compensable travel time from the get-together site to the job site, and this nonpayment means that both plaintiffs were paid less than the minimum wage for their work time in a given pay period. *Accord*, 29 C.F.R. § 785.38; *Hugler v. Westside Drywall, Inc.*, No. 3:15-CV-02411-BR, 2017 WL 1027026, at *7 (D. Or. Mar. 14, 2017). In addition, the wrongful deduction for a phantom draw further dropped Mr. Durland below the minimum wage.

Because of the above violations, on one occasion, each plaintiff was so underpaid for a week that, in addition to falling below the applicable Oregon minimum wage, they also fell below the applicable federal minimum wage, in violation of 29 U.S.C. 206.

In the Amended Complaint, plaintiffs pled as follows:

> 4.
> STRAUB withheld a paycheck from plaintiff Donald Durland based upon a false allegation that he had taken a draw.
> ...
> 6.
> On defendants' specific instruction, plaintiffs and the class members did not include travel time to job sites in their hours worked, when such time was compensable under both state and federal law. They have not been paid for that time, nor for the overtime it causes.
> ...
> **NINTH CAUSE OF ACTION**
> FLSA Minimum Wage
> 36.
> All previous paragraphs are incorporated by reference herein.
> 37.
> Pursuant to 29 USC § 206 of the federal Fair Labor Standards Act (FLSA), STRAUB was required to pay plaintiffs at least the applicable federal minimum wage when those wages were due, but willfully failed to do so.
> 38.
> Pursuant to 29 USC § 216(b), plaintiffs are therefore entitled to

**Plaintiffs' Amended motion for entry of judgment of default**          Page 15

any unpaid federal minimum wages, plus liquidated damages, and
attorney fees, costs, and disbursements.

Dkt. 23 at 2–3, 9–10.

Plaintiffs have therefore adequately pled this claim.

### i. FLSA Overtime

29 U.S.C. 207 requires employers to pay time and a half for all hours worked in
excess of 40 in a given workweek. Because each plaintiff typically worked 40 or more
hours each week, the large amounts of unpaid compensable travel hours were almost all
overtime hours.

In their Amended Complaint, plaintiffs pled as follows:

> 4.
> STRAUB withheld a paycheck from plaintiff Donald Durland
> based upon a false allegation that he had taken a draw.
> ...
> 6.
> On defendants' specific instruction, plaintiffs and the class
> members did not include travel time to job sites in their hours
> worked, when such time was compensable under both state and
> federal law. They have not been paid for that time, nor for the
> overtime it causes.
> ...
> **TENTH CAUSE OF ACTION**
> FLSA Overtime
> 39.
> All previous paragraphs are incorporated by reference herein.
> 40.
> Pursuant to 29 USC § 207, STRAUB was required to pay
> plaintiffs at least time and a half for all hours worked in excess of 40
> in a given workweek when those wages were due, but willfully failed
> to do so.
> 41.
> Pursuant to 29 USC § 216(b), plaintiffs are therefore entitled to
> any unpaid federal overtime, plus liquidated damages, and attorney
> fees, costs, and disbursements.

Dkt. 23 at 2–3, 10.

Plaintiffs have therefore adequately pled this claim.

**Plaintiffs' Amended motion for entry of judgment of default**          Page 16

**j. Pre-judgment Interest**

Oregon provides for 9% simple pre-judgment interest running on all moneys after they become due. O.R.S. 82.010(1)(a). Wages are "due at the times described in ORS § 652.120 and ORS § 652.140. The amounts owed [are] ascertained or readily ascertainable as of those times by simple calculation …. The interest on … penalty wages began to run at the point when the penalty had 'fully accrued,' that is, 30 days following [the] initial non-payment." *Hunter v. Dutch Gold Res., Inc.*, No. 1:11-CV-01450-CL, 2012 WL 3614336, at *4 (D.Or. Aug. 20, 2012), citing *Russell v. U.S. Bank Nat. Ass'n,* 246 Or.App. 74, 80–81 (2011) and *Smurfit Newsprint Corp.,* 197 Or.App. 648, 674 (2005).

Plaintiffs pled the right to pre-judgment interest on all of their state-law damages as follows:

### Preliminary Statement

1.

… This is an individual and class and collective action under state and federal laws for certain present and former employees of STRAUB to recover unpaid wages, penalty wages, statutory damages, non-economic damages, liquidated damages, punitive damages, and attorney fees, costs, and disbursements (and pre-judgment interest thereon), as well as equitable and declaratory relief.
…

14.

Plaintiffs and the class members are entitled to collect $1,000 per pay period, together with injunctive relief, attorney fees, costs, and disbursements per ORS 652.100(2), as well as pre-judgment interest.
…

17.

Plaintiffs are entitled to collect the wages due in an amount to be proven at trial, together with attorney fees, costs, and disbursements per ORS 652.200, as well as pre-judgment interest.
…

20.

Plaintiffs and the class members are entitled to (for each violation) the greater of $200 statutory damages or actual damages

in an amount to be proven at trial, pursuant to ORS 652.615, together with attorney fees, costs, and disbursements, and pre-judgment interest.
…

23.

Pursuant to ORS 653.055 and 652.150, therefore, plaintiffs and the class members are entitled to the amount of unpaid minimum wages, penalty wages, and attorney fees, costs, and disbursements, and pre-judgment interest.
…

26.

Pursuant to ORS 653.055 and 652.150, therefore, plaintiffs and the class members are entitled to the amount of unpaid overtime wages, penalty wages, attorney fees, costs, and disbursements, and pre-judgment interest.
…

29.

Plaintiffs and the class members are entitled to collect all wages remaining due, in an amount to be proven at trial, together with attorney fees and costs per ORS 652.200, as well as pre-judgment interest, and the 30 days of statutory penalty wages provided by ORS 652.150.
…

32.

Plaintiff Donald Durland is entitled to recover the value of the property tortiously converted, in addition to pre-judgment interest, non-economic damages, and punitive damages.
…

35.

Plaintiff Donald Durland is entitled to the money unlawfully withheld from him, in an amount to be proven at trial, in addition to pre-judgment interest and punitive damages.
…

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs request that the Court … award pre-judgment interest as provided by law[.]

Dkt. 23 at 1–2, 5–11.

By contrast, plaintiffs have not pled the right to pre-judgment interest on any of their federal-law FLSA damages. FLSA liquidated damages serve the same purpose as prejudgment interest, *i.e.*, compensation for delay in payment, so pre-judgment interest is not available on FLSA damages. *See, e.g.*, *Mathis v. Hous. Auth. of Umatilla Cty.*, 242 F. Supp. 2d 777, 789–90 (D. Or. 2002) (so stating).

**Plaintiffs' Amended motion for entry of judgment of default**          Page 18

Plaintiffs have therefore adequately pled the entitlement to pre-judgment interest on their state-law claims.

## 2. Counterclaims against Donald Durland

A defendant pleading a counterclaim, like a plaintiff pleading a claim, "is charged with the exercise of 'reasonable diligence' in prosecuting the action." *Moore v. Telfon Commc'ns Corp.*, 589 F.2d 959, 967 (9th Cir. 1978) (citations omitted). In our case, defendants are in default, have refused to participate in discovery, have put forth no evidence to support their counterclaims, and have failed to move those counterclaims toward trial in any way, shape, or form.

Judgment should therefore be entered in plaintiffs' favor on all of defendants' counterclaims.

### a. Money Had and Received

There is no evidence that Mr. Durland "submitted hours for wages and overtime payments that were not proper under state or federal law or company policy." Dkt. 5 at 12. Further, defendants have failed to respond to discovery or otherwise prosecute this purported counterclaim. Am. Egan Dec. at ¶ 2 and Exhibit 1. Judgment should therefore be entered in plaintiffs' favor on this counterclaim.

### b. Fraud

There is no evidence of fraud. Further, defendants have failed to respond to discovery or otherwise prosecute this purported counterclaim. Am. Egan Dec. at ¶ 2 and Exhibit 1. Judgment should therefore be entered in plaintiffs' favor on this counterclaim.

### c. Breach of Contract

There is no evidence that Mr. Durland breached any contract with defendants. Further, defendants have failed to respond to discovery or otherwise prosecute this

purported counterclaim. Am. Egan Dec. at ¶ 2 and Exhibit 1. Judgment should therefore

be entered in plaintiffs' favor on this counterclaim.

## C. Fourth *Eitel* Factor

The fourth *Eitel* factor considers the amount of money at stake. "[A] large sum of

money at stake would disfavor default judgment." *J & J Sports Prods., Inc. v. Cardoze*,

No. C 09-05683 WHA, 2010 WL 2757106, at *5 (N.D. Cal. July 9, 2010) (citing *Eitel*,

782 F.2d at 1472).

Though large sums are disfavored, they are not dispositive. Courts have granted

default judgment when plaintiffs "provided detailed and unrebutted documentation in

support of their motion," because "it is well settled that a defendant should not be

allowed to evade judgment as a result of failing to appear." *Emerging Acquisitions, LLC

v. Oracle Installations & Fabricators, LLC*, No. 6:20-cv-00453-MK, 2021 WL 325711, at

*2 (D. Or. Feb. 1, 2021) (citation and quotation marks omitted); *see also Swift Fin., LLC

v. Alabar Constr., Inc.*, No. 2:18-cv-02009-SU, 2019 WL 654343, at *3 (D. Or. Jan. 30,

2019), *report and recommendation adopted*, No. 2:18-cv-02009-SU, 2019 WL 653801

(D. Or. Feb. 15, 2019) (noting "substantial sum," but granting default judgement where

"plaintiff has presented uncontested evidence" of amount owed).

In the instant case, the default judgment requested is more than nominal, but less

than that identified in previous cases denying default judgment. *See, e.g.*, *Eitel*, 782 F.2d

at 1472 (noting $3 million sought in damages as factor weighing against granting default

judgment). The amount of damages that plaintiffs seek is commensurate with

defendants' repeated, willful, and fraudulent violations over a period of multiple years

and does not weigh against granting default judgment.

Further, the amounts are those provided by statute, and Plaintiffs have presented

"uncontested evidence" of the amounts. *See Swift Fin., LLC*, 2019 WL 654343, at *3; *see also Red Lion Hotels Franchising, Inc. v. Dumon*, No. 2:20-CV-0183-TOR, 2021 WL 1269120, at *3 (E.D. Wash. Apr. 6, 2021) ("While a large sum of money weighs in favor of a decision on the merits, the amount directly relates to and flows from the Defendant's breach of [contract] with no contradictory evidence.").

This factor is therefore neutral or favors entry of default judgment.

## D.  Fifth *Eitel* Factor

The fifth *Eitel* factor considers whether a dispute of material facts is likely. Because upon entry of default, all well-pleaded facts in the complaint are taken as true, "[t]he fifth factor … weighs in favor of default judgment when the claims in the complaint are well-pleaded." *Joe Hand Prods. v. Holmes*, No. 2:12-CV-00535-SU, 2015 WL 5144297, at *7 (D. Or. Aug. 31, 2015). Otherwise stated, "[b]ecause all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists." *Id.* (quoting *Elektra Entm't Grp., Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ).

"Where the [p]laintiff's complaint is well-pleaded and the defendant makes no effort to properly respond, the likelihood of disputed facts is very low." *3M Co. v. Phx. Auto. Refinishing Co., Ltd.*, CV 17-00649-RSWL-DTB, 2018 WL 1989536, at *5 (C.D. Cal. Apr. 25, 2018) (quoting *Warner Bros. Home Ent., Inc. v. Slaughter*, No. CV 13–0892–DOC RNB(x), 2013 WL 5890682, at *3 (C.D. Cal. Oct. 30, 2013)) (alteration in original).

As explained above, plaintiffs' claims are well-pleaded. Defendants have made no effort to respond to the amended complaint, to respond to discovery, or to respond to other communication attempts by this court or plaintiffs' counsel. This factor therefore weighs in favor of default judgment.

**Plaintiffs' Amended motion for entry of judgment of default**    Page 21

### E. Sixth *Eitel* Factor

The sixth *Eitel* factor considers the possibility that the default resulted from excusable neglect. Here, defendants were properly served with the complaint and initially responded. Dkt. 5. However, after defense counsel withdrew, defendants failed to respond to any attempts by plaintiffs or the Court. *See, e.g.*, Dkts. 21, 25, 27, 30, 40. *See also* all notices of electronic filing in the case, which have been emailed to the email address provided by defendants' counsel upon withdrawing, *Jessie.straubconstruction@gmail.com*. For instance, defendants were properly served with plaintiffs' discovery requests (Am. Egan Dec. at ¶ 2) and even granted an extension [Dkt. 18], but did not respond (Am. Egan Dec. at ¶ 2). Defendants did not respond to this Court's instruction to inform the Court whether they intended to proceed pro se [1] or with counsel [Dkt. 18]. Defendants did not respond to plaintiffs' motion to amend [Dkt. 19], plaintiffs' amended complaint [Dkt. 23], plaintiffs' motion for entry of default [Dkt. 26], or plaintiffs' first motion for entry of judgment [Dkt. 31]. Thus, defendants have had ample notice of plaintiffs' intent to pursue a default judgment, yet they have not filed any response. Therefore, there is no indication that defendants' default has resulted from excusable neglect, and this factor favors entry of default judgment.

### F. Seventh *Eitel* Factor

Factor seven is "the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits," specifically the policy that "[c]ases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. However, "this policy, standing alone, is not dispositive, especially where a defendant fails to appear or

---

[1] Of course, the LLC defendant could not proceed pro se, but Mr. Straub could.

defend itself in an action." *Joe Hand Prods.*, 2015 WL 5144297, at *8. Where a defendant has failed to answer a complaint, it "makes a decision on the merits impractical, if not impossible." *Id.* Further, state and federal law have made specific provision for the entry of judgment when (as here) the defendants' failure to maintain proper time and pay records requires the plaintiffs to establish their damages by "just and reasonable inference." *Wells v. Carlson*, 78 Or. App. 536, 542 (1986), citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 688, 66 S.Ct. 1187, 1192, 90 L.Ed. 1515 (1946).).

Thus, the seventh factor does not override the other six factors, and default judgment is appropriate in this case.

## VI. Terms of the judgment to be entered

"After determining that a party is entitled to entry of default judgment, the court must determine the terms of the judgment to be entered. A plaintiff is required to prove the amount of his damages, because neither the default nor the allegations in the complaint can establish the amount of damages." *Allstream Bus. US, LLC v. Carrier Network Sols., LLC*, No. 3:20-CV-01970-IM, 2021 WL 3488086, *8 (D. Or. Aug. 9, 2021) (cleaned up).

Below, plaintiffs discuss the evidence supporting (a) the imposition of liability against both defendants, not just the LLC defendant, and (b) the calculation of damages.

## A.  Jessie James Straub was the plaintiffs' joint employer.

The Ninth Circuit has held that the FLSA is not limited by the common law concept of who the employer is, but rather "is to be given an expansive interpretation in order to effectuate the FLSA's broad remedial purposes." *Lambert v. Ackerley,* 180 F.3d 997, 1011-12 (9th Cir.1999) (*en banc,* quotations omitted). The determination of whether an

employer-employee relationship exists does not depend on "isolated factors but rather upon the circumstances of the whole activity." *Rutherford Food Corp. v. McComb,* 331 U.S. 722, 730, 67 S.Ct. 1473, 91 L.Ed. 1772 (1947). The touchstone is the "economic reality" of the relationship. *Goldberg v. Whitaker House Coop., Inc.,* 366 U.S. 28, 33, 81 S.Ct. 933, 6 L.Ed.2d 100 (1961).

Those general rules apply to individuals as well as corporations. "Where an individual exercises control over the nature and structure of the employment relationship, or economic control over the relationship, that individual is an employer within the meaning of the Act, and is subject to liability." *Boucher v. Shaw*, 572 F.3d 1087, 1091 (9th Cir. 2009) (citations omitted). The Ninth Circuit has noted that "the overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." *Id*. at 1094 (internal quotation marks omitted); *see also Solis v. Velocity Exp., Inc.,* No. 03:09-cv-00864-MO, 2010 WL 2990293, *2 (D.Or. Jul. 26, 2010) (noting that an "individual may be personally liable for FLSA violations if he or she exercises control over the nature and structure of the employment relationship or economic control over the relationship," and that a "corporate officer may qualify as an employer if he or she had a significant ownership interest in the corporation with operational control of significant aspects of the corporation's day-to-day functions; the power to hire and fire employees; the power to determine salaries; or the responsibility to maintain employment records.") (internal quotation marks, brackets, and citations omitted).

Courts in this district have found owner/officers with significant operational authority to be employers. *Gutierrez Negrete v. Commercial Roofing Sols. Inc.*, No.

3:18-CV-1999-SI, 2020 WL 1249887, *4-*5 (D.Or. Mar. 16, 2020) ("Burns is personally liable for any FLSA and Oregon wage law violations … Burns is personally liable under the FLSA because he exercised the same control over the employment relationship with Plaintiffs as did CRS. Indeed, CRS acted through Burns, who exercised ultimate authority over the subcontractor agreement with Naranjo. Substantially the same facts and analysis about whether CRS was an employer apply to Burns because he exercised 'control over the nature and structure of the employment relationship, or economic control over the relationship'."); *Chao v. Telecommunications Support Sys., Inc.*, No. CV-03-625-BR, 2005 WL 906486, *1 (D.Or. Apr. 18, 2005) ("Marshall, as President and co-owner of TSSI, was an employer until the sale of his share in the company on January 6, 2003. During Marshall's tenure with TSSI, employees were not paid for hours worked in excess of 40 hours per week in violation of 29 U.S.C. § 207(a)(1). Marshall, therefore, is liable for violation of the FLSA, and Plaintiff is entitled to summary judgment as to this issue."); *Perez v. Oak Grove Cinemas, Inc.*, 68 F.Supp.3d 1234, 1245 (D.Or. 2014) ("And, as the sole shareholder of OGC, he had the authority to hire and fire, sign paychecks, and determine the rate of pay. Based on this evidence, David Emami is an 'employer' under section 203(d).").

In determining that an owner/officer's economic control over a company made the officer an "employer" individually liable under wage and hour law, courts acknowledge the economic reality that, in such cases, the employment decisions of the business entity are indistinguishable from the employment decisions of individual officers. *Solis v. Velocity Exp., Inc.*, No. CV-09-864-MO, 2010 WL 2990293, *3-*4 (D.Or. Jul. 26, 2010), citing *Boucher,* 572 F.3d at 1091 (noting that defendant corporate officers collectively held 100% ownership interest in the corporation), *U.S. Dep't of Labor v. Cole*

*Enterprises, Inc.*, 62 F.3d 775, 778 (6th Cir.1995) (affirming the district court's finding that the defendant owned 50% of the corporation), *Dole v. Elliot Travel & Tours,* 942 F.2d 962, 966 (6th Cir.1991) (noting that the defendant co-owned the corporation with his wife), *Donovan v. Agnew,* 712 F.2d 1509, 1511 (1st Cir.1983) (noting that the two defendants "together were President, Treasurer, Secretary and sole members of the Board of Directors"), and *Dole v. Solid Waste Servs., Inc.,* 733 F.Supp. 895, 900-01 (E.D.Pa. 1989) (finding three corporate officers jointly and severally liable as employers under the FLSA where those three officers collectively owned and controlled the corporation).).

Importantly, "a corporate officer may be personally liable as an employer even if he or she does not directly supervise employees." *Solis v. Velocity Exp., Inc.*, No. CV-09-864-MO, 2010 WL 2990293, *5 (D.Or. July 26, 2010), citing *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir.1999), *holding modified on other grounds by Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61 (2d Cir.2003) (contemplating liability even in cases where the alleged employer exercises "restricted" or "occasional[ ]" control over the employment relationship). "When analyzing the economic reality of an employment relationship, courts pay particular attention to whether the corporate officer's duties made him or her 'principally in charge of directing employment practices' such that the employer was "instrumental in 'causing' the corporation to violate the FLSA." *Id.* at *5 (citations omitted).

And because Mr. Straub and Straub Construction LLC are joint employers under the FLSA, they are also viewed as joint employers under Oregon law. Because they share the same broad "suffer or permit" definition of employ, Oregon follows federal law with regard to joint employment, and the issues are the same. *See, Cejas Commercial*

*Interiors, Inc. v. Torres-Lizama*, 260 Or. App. 87, 97–98 (2013) ("In patterning

Oregon's minimum-wage provisions after the FLSA and adopting the FLSA's definition

of 'employ,' the legislature adopted an established term of art from federal law. In 1967,

when the legislature enacted the minimum-wage provisions, the leading United States

Supreme Court case interpreting the definition of 'employ' under the FLSA was, and had

been for many years, *Rutherford*. In that case, the Court applied the economic-realities

test and explained that the FLSA's definition of 'employ' applies to 'many persons and

working relationships, which prior to [enactment of the FLSA], were not deemed to fall

within an employer-employee category.' Thus, when the legislature defined 'employ' to

include 'to suffer or permit to work,' ORS 653.010(2), the broad scope of that definition

and the applicability of the economic-realities test had been established in federal law

for at least 20 years.") (brackets in original, citations omitted); *Moore v. Gulf Atl.*

*Packaging Corp.*, No. 3:16-CV-886-PK, 2016 WL 8231142, *15 (D. Or. Nov. 29, 2016),

*report and recommendation adopted,* No. 3:16-CV-00886-PK, 2017 WL 540051 (D. Or.

Feb. 9, 2017) ("Under Oregon law, an employer is defined as 'any person who employs

another person.' Or. Rev. Stat. § 653.010(3). To determine whether a person employs

another, the Oregon courts apply an 'economic realities' test. *See Cejas Commer.*

*Interiors, Inc. v. Torres–Lizama*, 260 Or. App. 87, 103 (2013)," noting that *Cejas* cites

*Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947)); *see also Dinicola v.*

*State*, 246 Or. App. 526, 534 (2011), *citing Torres–Lopez v. May*, 111 F3d 633, 639–640

(9th Cir. 1997) and *Boucher v. Shaw*, 572 F.3d 1087, 1091 (9th Cir. 2009).

Jessie James Straub was the owner, registered agent, and sole manager of Straub

Construction LLC. *See* [this link to the Oregon Secretary of State's listing for that LLC](.).

Mr. Straub gave the plaintiffs all of their assignments, he told them what time to put and

not to put on their time sheets, he hired them, he fired them, and he controlled how much they were paid. Amended Declarations of Donald Durland at ¶ 2 Robert Fritchie at ¶ 2. He is therefore a joint employer with Straub Construction LLC.

## B. The evidence supports plaintiffs' damage calculations

Plaintiffs do not have complete time and pay records from their employment with defendants, and defendants did not respond to plaintiffs' discovery requests seeking those documents. Plaintiffs are therefore entitled to prove their damages by just and reasonable inference. *See, e.g.*, *Wells v. Carlson*, 78 Or. App. 536, 542 (1986) ("In some instances, like this one, it might be difficult for an employee seeking unpaid wages to prove the amount owing, because the employer might have kept inadequate records or even intentionally have obfuscated them. In cases where an employe[e]'s inability to prove damages arises from an employer's inadequate records, the employer should not be allowed to avoid a statutory wage claim because the claimant's evidence lacks the exactness of measurement that would be possible if the employer had kept the records required by law," citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 688, 66 S.Ct. 1187, 1192, 90 L.Ed. 1515 (1946).).

Exhibit 1 to the Amended Declarations of Donald Durland and Robert Fritchie contain all of the time and pay records that plaintiffs were able to obtain prior to defendants firing defense counsel and refusing further communication. Plaintiffs' Amended Declarations submitted herewith also give their best estimates regarding the information that is missing from those time and pay records. Exhibits 1 and 2 to the Declaration of Michèle Lauzier contain the calculations for damages, using the records when possible and plaintiffs' estimates when not. The body of her Declaration lays out how the amounts were calculated using the testimony and documents in evidence. The

specific calculations pertaining to each claim are laid out below.

## 1. Coerced False Time Reports

Plaintiff Donald Durland testified:

> 3. I worked five days a week. Every day, all of us workers would gather at the shop, get our instructions and supplies, and then ride together to whatever site we were working on. We were not paid for this travel time, nor for the time to return from the site to the shop. This is because the owner had me (the shift foreman) track the time worked for all of the employees (including myself). These time records were filled out on paper in my handwriting, and I had to sign it. Mr. Straub told me to only record the time starting when we arrived at the site and end when we left the site. I told him at the beginning that I thought people were supposed to be paid for travel time, but he said "I'm not doing that." I also told him that I didn't want to sign a false time record, and he ordered me to do it anyway. By doing that, he ordered me to put my name on time records that we both knew were false, and by doing that, he kept any of us from having real records of how long we worked. And he made it look like it was my fault because it was in my handwriting and I had to sign it. But I followed his orders and kept the on-site hours accurately and correctly. For the hours that did make it onto my pay stub, I definitely worked all of those hours. But I also worked a lot more than that because those don't include our travel time that I was specifically told not to include in those hours.

Am. Durland Dec. at ¶ 3. O.R.S. 652.100(2) provides that the Court award actual damages or $1,000 for each violation of the coerced false time reports statute. The same subsection provides that "The court shall count each pay period in which a violation occurs or continues as a separate violation." As seen on Exhibit 1 to Lauzier Dec., there are 96 pay periods at issue in this claim, and Mr. Durland testified that he was coerced into creating and signing false time reports for every one of them. Mr. Durland is therefore entitled to $96,000 on this claim. This amount is reflected at the bottom of column O on Exhibit 1 to Lauzier Dec.

## 2. Unpaid Wages

Mr. Durland testified:

> 4. Below is a list of the locations of the sites we worked on, along with the one-way driving times we were not paid for, to the best of my memory:

**Plaintiffs' Amended motion for entry of judgment of default**    Page 29

      a. Month 1 Battleground WA - 58 min from shop to site

      b. Month 2 Estacada - 37 min from shop to site

      c. Month 3-3.5 McMinnville - 1 hr 3 min from shop to site

      d. Month 3.5 -4.5 Redland - 30 min from shop to site

      e. Month 4.5-5.5 Aurora - 38 min from shop to site

      f. Month 5.5- 6 - Boring- 33 min from shop to site

      g. Month 6-7 Oregon City- 37 min from shop to site

      h. Month 7-8 Sherwood - 50 min from shop to site

      i. Month 8-9 Roseburg- 5 hrs twice a week from shop to site. 30 min from hotel to site during the week.

      j. Month 9-10 Gresham-49 min from shop to site

      k. Month 10-13 Lapine - 3 hrs 30 min twice a week from shop to site. 15 min from hotel to site during the week.

      l. Month 13-15 Tillamook - 1 hr 43 min twice a week from shop to site. 15 min from hotel to site during the week.

      m. Month 15-16 Kent WA- 3hrs 36 min twice a week from shop to site. 20 min from hotel to site during the week.

      n. Month 16-16 1/2- Molalla 5 min from shop to site

      o. Month 16.75-19 Belfair WA- 3 hrs 17 min twice a week from shop to site. 13 min from hotel to site during the week.

      p. Month 19-20 Carson WA - 1 hr 30 min twice a week from shop to site. 40 min from hotel to site during the week.

      q. Month 20-22.5 Othello WA - 4 hrs 51 min twice a week from shop to site. 30 min from hotel to site during the week.

5. There are some jobs I don't remember but this is as close as I can get. Those are one-way times, so unless I wrote otherwise, we had to drive those twice a day off the clock.

Am. Durland Dec. at ¶¶ 4–5. Mr. Durland was the shift foreman and reported the hours for his whole team. Mr. Fritchie concurs with the above totals. Am. Fritchie Dec. at ¶ 3. For each weekly pay period, those unpaid hours were tallied and the result entered in column E. For example, in the first month, Mr. Durland testified that he and his crew had to drive 58 minutes one-way to the job site every day. So, that is ten 58-minute trips per weekly pay period (one there and one back for each of the 5 days worked), or 580 minutes. 580 minutes divided by 60 minutes per hour is 9.67 hours. Thus, Messrs. Durland and Fritchie each worked 9.67 hours off the clock in that workweek.

    Each week's unpaid hours were multiplied by the rate in effect for that week, with overtime earning time and a half, and the result entered into column P. This is the

**Plaintiffs' Amended motion for entry of judgment of default**       Page 30

plaintiff's unpaid wages for the pay period.

Mr. Durland is entitled to $33,061.30 in unpaid wages, and Mr. Fritchie is entitled to $28,603.40 in unpaid wages. Those totals are reflected at the bottom of column P on each of their spreadsheets. Lauzier Dec. at Ex. 1–2.

### 3. Wrongful Deductions

In violation of O.R.S. 652.610(3), defendants took a $622.74 deduction from plaintiff Donald Durland's final check, purportedly for a "draw," but he never took such a draw and never gave his written permission for any such deduction. Exhibit 1 to Am. Durland Dec. at p. 99; Am. Declaration of Durland at ¶ 8. Because the amount of the deduction is more than the $200 statutory minimum, Mr. Durland is entitled to $622.74 under O.R.S. 652.615.

In addition, for the first eight pay periods in 2019, defendants overdeducted Oregon Workers' Benefit Fund assessments from plaintiffs' wages, such that plaintiffs were paying a portion of the employer's share of that assessment. *See* Exhibits 1–2 to Lauzier Dec., red-highlighted cells in column M; Exhibit 1 to Am. Durland Dec. at 65–72; Am. Durland Dec. at ¶ 7, Am. Fritchie Dec. at ¶ 5. The overdeductions themselves were repaid in April of that year. Exhibit 1 to Am. Durland Dec. at 78 ("Payroll Correction"). Each plaintiff therefore seeks only the $200 in statutory damages under O.R.S. 652.615 for those wrongful deductions.

Mr. Durland is entitled to $822.74 in wrongful deduction damages, and Mr. Fritchie is entitled to $200.00 in wrongful deduction damages. Those totals are reflected at the bottom of column R on each of their spreadsheets. Lauzier Dec. at Ex. 1–2.

### 4. Oregon Minimum Wage

Because each plaintiff had so many uncompensated hours, there were many

paychecks in which their wages fell below the applicable Oregon minimum wage in violation of O.R.S. 653.025 (these pay periods are highlighted red in column I of each plaintiff's spreadsheet). O.R.S. 653.055 provides for unpaid wages plus a 30-day penalty for violation of the Oregon minimum wage. Unpaid wages are already beings sought in section VI.B.2 above. For their Oregon minimum wage claims, therefore, each plaintiff is entitled to a 30-day penalty on the date of the earliest such violation within the three-year statute of limitations period for penalty wages, per O.R.S. 653.055 (which incorporates the penalty wage calculations in O.R.S. 652.150). Those amounts are reflected in Exhibits 1 and 2 to Lauzier Dec. in column S, marked "653.055 MW".

Mr. Durland is entitled to $4,560.00, and Mr. Fritchie to $4,080.00, in penalty wages for defendants' minimum-wage violations. Those totals are reflected at the bottom of column S on each of their spreadsheets. Lauzier Dec. at Ex. 1–2.

### 5. Oregon Overtime

Because each plaintiff typically worked 40 or more hours each week, the large amounts of unpaid compensable travel hours were almost all overtime hours. O.R.S. 653.055 provides for unpaid wages plus a 30-day penalty for violation of the Oregon overtime statute. Unpaid wages are already beings sought in section VI.B.2 above. For their Oregon overtime claims, therefore, each plaintiff is entitled to a 30-day penalty on the date of the earliest such violation within the two-year statute of limitations period for overtime penalty wages, per O.R.S. 653.055 (which incorporates the penalty wage calculations in O.R.S. 652.150). Those amounts are reflected in Exhibits 1 and 2 to Lauzier Dec. in column U, marked "653.055 OT".

Mr. Durland is entitled to $4,560.00 in penalty wages, and Mr. Fritchie is entitled to $4,080.00 in penalty wages, for defendants' overtime violations. Those totals are

reflected at the bottom of column U on each of their spreadsheets. Lauzier Dec. at Ex. 1–2.

**6. Unpaid Wages Upon Termination**

Because the amounts owing to plaintiffs (see section VI.B.2 above) remain unpaid more than 30 days after their termination, in violation of O.R.S. 652.140, plaintiffs are entitled to 30 days of penalty wages per O.R.S. 652.150. Those amounts are reflected in Exhibits 1 and 2 to Lauzier Dec. in column Q, marked "652.150".

Mr. Durland is entitled to $4,560.00, and Mr. Fritchie is entitled to $4,080.00, in penalty wages for their unpaid-wages-upon-termination claims. Those totals are reflected at the bottom of column Q on each of their spreadsheets. Lauzier Dec. at Ex. 1–2.

**7. Conversion, Money Had and Received**

Mr. Durland is already seeking recovery of the amounts stolen from him, as statutory wrongful deductions (*see* section VI.B.3 above). He therefore seeks no additional damages for conversion or money had and received.

**8. FLSA Minimum Wage**

On August 23, 2019, Mr. Durland was paid nothing (see column N, "Net," for that date on Exhibit 1 to Lauzier Dec.), for 40.5 on-the-clock hours and 24.40 hours of compensable travel time. That is less than the applicable $7.25 federal minimum wage. Mr. Durland is already seeking payment of his unpaid wages in section VI.B.2 above. He is therefore seeking only liquidated damages per 29 U.S.C. 216(b), in the amount of $560.79, for his federal minimum-wage claim.

On August 22, 2019, Mr. Fritchie was paid $272 for 16 hours' work (columns C and G on Exhibit 2 to Lauzier Dec.). But he was not paid anything for 24.40 hours of compensable travel time. Thus, his $272 actually covers 40.40 hours, at a true hourly rate of only $6.73 per hour. This is less than the applicable $7.25 federal minimum

wage. Mr. Fritchie is already seeking payment of his unpaid wages in section VI.B.2 above. He is therefore seeking only liquidated damages per 29 U.S.C. 216(b), in the amount of $22.35, for his federal minimum-wage claim.

Thus, Mr. Durland is entitled to $560.79, and Mr. Fritchie is entitled to $22.35, for their federal minimum-wage claims. Those totals are reflected at the bottom of column T on each of their spreadsheets. Lauzier Dec. at Ex. 1–2.

### 9. FLSA Overtime

Because each plaintiff typically worked 40 or more hours each week, the large amounts of unpaid compensable travel hours were almost all overtime hours. 29 U.S.C. 216(b) provides for unpaid overtime, plus liquidated damages in an equal amount. Unpaid overtime wages are already being sought in section VI.B.2 above. For their FLSA overtime claims, therefore, each plaintiff is entitled to liquidated damages equal to the unpaid overtime. It is calculated by calculating the amount of hours over 40 that were uncompensated, and multiplying that amount by 1.5 times the plaintiff's hourly rate. The results of those calculations are reflected in Exhibits 1 and 2 to Lauzier Dec. in column V, marked "29 USC 216 OT".

Mr. Durland is entitled to $30,158.40, and Mr. Fritchie is entitled to $26,406.10, in overtime liquidated damages. Those totals are reflected at the bottom of column V on each of their spreadsheets. Lauzier Dec. at Ex. 1–2.

### 10. Pre-judgment Interest

By statute, Oregon law provides for 9% simple prejudgment interest running on all moneys after they become due. O.R.S. 82.010(1)(a). Plaintiffs are entitled to prejudgment interest on all of their Oregon claims, but not their federal FLSA claims. In Exhibits 1 and 2 to Lauzier Dec., column W, marked "2/14/22", contains the

prejudgment interest on the Oregon claims only, through today's date.

Mr. Durland is entitled to $43,125.63 (with an additional $35.40 accruing daily), and Mr. Fritchie is entitled to $11,993.51 (with an additional $10.12 accruing daily), in prejudgment interest on their state-claim damages. Those totals are reflected at the bottom of column W on each of their spreadsheets. Lauzier Dec. at Ex. 1–2.

## VII.   Conclusion

Plaintiffs therefore seek a total judgment of $296,874.22 as of today's date, made up of $217,408.86 to Donald Durland (with an additional $35.40 in prejudgment interest accruing daily through entry of judgment) and $79,465.36 to Robert Fritchie (with an additional $10.12 in prejudgment interest accruing daily through entry of judgment).

Dated this February 14, 2022

JON M. EGAN, P.C.

*/s/ Jon M. Egan*
_____
JON M. EGAN, OSB # 002467
(503) 697-3427
Attorney for Plaintiffs