IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **DONALD DURLAND** and **ROBERT FRITCHIE**,<br><br>    Plaintiffs,<br><br>  v.<br><br>**JESSIE JAMES STRAUB** and **STRAUB CONSTRUCTION LLC**,<br><br>    Defendants. | Case No. 3:20-cv-00031-IM<br><br>**OPINION AND ORDER** |

Jon M. Egan, Jon M. Egan, P.C., 547 Fifth Street, Lake Oswego, OR 97034. Attorney for Plaintiffs.

**IMMERGUT, District Judge.**

  This matter comes before this Court on Plaintiffs' Amended Motion for Default Judgment, ECF 41. Plaintiffs Donald Durland and Robert Fritchie seek default judgment against their former employer, Defendants Jessie James Straub ("Straub") and Straub Construction LLC ("Straub Construction"). Plaintiffs allege state and federal claims related to wage and hour violations against Defendants. As explained below, this Court GRANTS Plaintiffs' Amended Motion for Default Judgment, ECF 41, and awards damages—exclusive of prejudment interest— in the amount of $125,444.04 to Plaintiff Durland, and $32,883.40 to Plaintiff Fritchie.

PAGE 1 – OPINION AND ORDER

# FACTUAL BACKGROUND[1]

Plaintiffs both began their employment with Defendants in 2017 and ended with the company on August 21, 2019. ECF 43 at ¶ 2; ECF 44 at ¶ 2. Plaintiff Durland was employed as a shift foreman, ECF 43 at ¶ 3, and Plaintiff Fritchie worked on Plaintiff Durland's construction team, *see* ECF 44 at ¶ 5. On every workday, Plaintiffs would gather at the shop, receive instructions and supplies, and then ride together to the work site they were assigned to. ECF 43 at ¶ 3; ECF 44 at ¶ 3. However, Plaintiffs did not receive compensation for the time spent traveling between the shop and job sites. As foreman, Plaintiff Durland was responsible for tracking the time worked by Defendants' employees and signing the time records. ECF 43 at ¶ 3. When Plaintiff Durland told Defendants that employees were supposed to be paid for their travel time between the shop and job sites, Defendants refused, and ordered Plaintiff to sign time records that omitted the allegedly compensable travel time. *Id.*

Defendants also withheld a paycheck from Plaintiff Durland on the false basis that he had taken a draw. ECF 23 at ¶ 4. Additionally, Defendants deducted all or part of the employer's share of the Oregon Workers' Benefit Fund assessments from Plaintiffs' wages. *Id.* at ¶ 5. This included failing to reduce the deduction after the statutory deduction rate was changed. *Id.* Plaintiffs have still not been paid for the additional travel time that they claim to be entitled to.

## PROCEDURAL BACKGROUND

On December 2, 2019, Plaintiff Durland filed this action in the Multnomah County

---

[1] The following facts are taken from Plaintiffs' Amended Complaint ("Complaint"), ECF 23, and Amended Motion for Default Judgment, ECF 41.

Circuit Court in the State of Oregon.[2] ECF 1-1. On January 7, 2020, Defendants, represented by counsel, timely filed a Notice of Removal and removed the case. ECF 1. On January 14, 2020, Defendants submitted an Answer to Plaintiff's Complaint and asserted counterclaims. On September 20, 2020, this Court granted Defendants' counsel's request to withdraw. ECF 18. On March 10, 2021, Plaintiffs filed an Amended Complaint which added Plaintiff Fritchie to the action. ECF 23. On April 5, 2021, after the deadline to respond to Plaintiffs' Complaint had passed, Plaintiffs moved for entry of default, ECF 26, and this Court granted the request, ECF 28. On June 20, 2021, Plaintiffs filed a Motion for Default Judgment. ECF 31. On January 13, 2022, this Court held a hearing where it ordered Plaintiffs to file an amended motion that clarified their request for damages and provided additional factual detail. ECF 39. On February 14, 2022, Plaintiffs filed an Amended Motion for Default Judgment which this Court now considers.[3] ECF 41.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 55(a), the Clerk of the Court is required to enter an order of default if a party against whom affirmative relief is sought fails timely to answer or otherwise defend an action. Fed. R. Civ. P. 55(a) ("When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."). Upon the entry of default, the

---

[2] While Plaintiffs' Complaint was originally styled as a class action, the Amended Motion for Default Judgment only seeks relief on behalf of Defendants Durland and Fritchie.

[3] Since Defendants' counsel's withdrawal on September 30, 2020, Defendants have failed to appear and have not responded to Plaintiffs' motions. *See, e.g.*, ECF 21 (returned mail), ECF 22 (noting lack of response to Plaintiffs' Motion to Amend), ECF 25 (returned mail), ECF 30 (returned mail), ECF 37 (Plaintiffs' Declaration indicating attempts to reach Defendants, service of Motion for Default Judgment at alternative location discovered in state-court electronic felony records, and subsequent nonresponse of Defendants), ECF 40 (returned mail).

PAGE 3 – OPINION AND ORDER

Court accepts "the well-pleaded factual allegations" of the complaint "as true." *DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007) (quoting *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992)); *see also Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977). The court, however, does not accept as admitted facts that are not well-pleaded, conclusions of law, or facts relating to the amount of damages. *DIRECTV*, 503 F.3d at 854; *Geddes*, 559 F.2d at 560; *see also Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir. 2008) ("The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." (quoting *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987)).

After default has been entered against a defendant, a court may enter a default judgment against that defendant. *See* Fed. R. Civ. P. 55(b). "The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980); *see also Dreith v. Nu Image, Inc.*, 648 F.3d 779, 786 (9th Cir. 2011) (noting that a district's court decision to enter a default judgment is reviewed for abuse of discretion). The "starting point" of the court's analysis, however, "is the general rule that default judgments are ordinarily disfavored." *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986).

## DISCUSSION

This Court has reviewed Plaintiffs' Amended Motion for Default Judgment—and Plaintiffs' declarations in support—which allege that Defendants violated the Fair Labor Standards Act ("FLSA") and various Oregon wage and hour statutes. Plaintiffs claim that they were not compensated for time spent traveling to job sites, were subject to wrongful deductions, and were compelled to sign false time records. As explained below, this Court finds that the *Eitel* factors favor default judgment.

**A. Personal and Subject-Matter Jurisdiction**

As a threshold matter, this Court notes that Plaintiffs have alleged sufficient facts to support the exercise of personal jurisdiction in this case. A district court "has an affirmative duty" to determine whether it has subject-matter jurisdiction and personal jurisdiction over the defendant before entering a default judgment. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). "Personal jurisdiction is proper whenever a party has consented to resolving disputes in a given jurisdiction." *Smith Cookie Co. v. Archway Cookies*, No. CV 03-248-HA, 2003 WL 23960710, at *3 (D. Or. Apr. 25, 2003). Defendants filed an Answer after removal, ECF 5, and they did not raise any issues of personal jurisdiction.

Further, this Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331, as this action is brought under the FLSA, 29 U.S.C. §§ 201, et seq. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over the claims based on Oregon law, as they are "part of the same case or controversy" as the FLSA claims. 28 U.S.C. § 1367(a); *see also Trustees of Constr. Indus. & Laborers Health & Welfare Tr. v. Desert Valley Landscape & Maint., Inc.*, 333 F.3d 923, 925 (9th Cir. 2003) ("Nonfederal claims are part of the same 'case' as federal claims when they derive from a common nucleus of operative fact and are such that a plaintiff would ordinarily be expected to try them in one judicial proceeding.") (internal quotation marks and citation omitted).

**B. *Eitel* Analysis**

This Court's default judgment analysis is guided by the Ninth Circuit's decision in *Eitel*, where the Ninth Circuit set out the factors that guide a district court's consideration of whether to enter default judgment. *See DIRECTV*, 503 F.3d at 852 (noting that *Eitel* "set[ ] out factors to guide district court's determination regarding the appropriateness of granting a default

judgment"). Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel*, 782 F.2d at 1471–72.

### 1. First *Eitel* Factor

The first *Eitel* factor considers whether a plaintiff will suffer prejudice if default judgment is not entered. *Eitel*, 782 F.2d at 1471. Given Defendants' failure to cooperate in this lawsuit and Plaintiffs' lack of alternative avenues of recovery, Plaintiffs would suffer prejudice if default judgment is not entered. This factor thus weighs in favor of default judgment on Plaintiffs' claims and dismissal of Defendants' counterclaims. *See Garcia v. Pacwest Contracting LLC*, No. 3:12-cv-01930-SI, 2016 WL 526236, at *3 (D. Or. Feb. 9, 2016) (noting lack of "alternative means by which to resolve their present claims" and finding this factor weighed in favor of default judgment).

### 2. Second and Third *Eitel* Factors[4]

In deciding whether to grant default judgment, the second and third *Eitel* factors ask this

---

[4] On January 9, 2020, Defendants filed an Answer to Plaintiff Durland's original Complaint and asserted three counterclaims for money had and received, fraud, and breach of contract. ECF 5 at 12–15. However, on March 10, 2021, Plaintiffs filed their First Amended Complaint, ECF 23, which Defendants failed to answer. In determining whether to dismiss a claim for failure to prosecute or failure to comply with a court order, this Court must consider: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to defendants/respondents; (4) the availability of less drastic alternatives; and (5) the public policy favoring disposition of cases on their merits. *Pagtalunan v. Galaza*, 291 F.3d 639, 642 (9th Cir. 2002). Defendants' repeated failure to litigate their claims, the age of this case, and judicial efficiency all militate in favor of this Court's dismissal of Defendants' counterclaims.

PAGE 6 – OPINION AND ORDER

Court to examine the merits of Plaintiffs' substantive claims and the sufficiency of the complaint. *Eitel*, 782 F.2d at 1471. "These two factors are often analyzed together and require courts to consider whether a plaintiff has state[d] a claim on which [it] may recover." *Viet. Reform Party v. Viet Tan - Viet. Reform Party*, 416 F. Supp. 3d 948, 962 (N.D. Cal. 2019) (citation omitted). "Of all the Eitel factors, courts often consider the second and third factors to be the most important." *Id.* (internal quotations omitted). At this stage, the Court takes "the well-pleaded factual allegations" in the complaint as true; however, the "defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *DIRECTV*, 503 F.3d at 854 (citation omitted). "[N]ecessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of No. America*, 980 F.2d 1261, 1267 (9th Cir. 1992).

      Plaintiffs' Motion seeks default judgment on nine claims: (1) coerced false time reports in violation of O.R.S. 652.100; (2) unpaid wages in violation of O.R.S. 652.120; (3) wrongful deductions in violation of O.R.S. 652.610; (4) failure to pay minimum wage in violation of O.R.S. 653.025(1); (5) failure to pay overtime in violation of O.R.S. 653.261; (6) failure to pay wages upon termination in violation of O.R.S. 652.140(1)–(2); (7) conversion; (8) failure to pay minimum wage in violation of 29 U.S.C. § 206; and (9) failure to pay overtime in violation of 29 U.S.C. § 207.[5]

---

[5] This Court notes that Plaintiffs' First Amended Complaint ("Complaint"), ECF 23, includes very little factual detail about Plaintiff's claims. On January 13, 2021, this Court held a hearing where it informed Plaintiffs of the factual deficiencies in their Complaint. ECF 39. This Court ordered Plaintiffs to amend their Motion for Default Judgment to address these deficiencies. The supplemental facts contained in Plaintiffs' Motion for Default Judgment—and the supporting declarations from Plaintiffs—will be construed as an amended complaint for the purposes of this Court's default analysis. *Cf. G&G Closed Circuit Events LLC v. Espinoza*, No. CV-18-08216-PCT-JAT, 2020 WL 377095, at *3 (D. Ariz. Jan. 23, 2020) (granting the plaintiff's motion for default judgment because "[t]he factual allegations in Plaintiff's complaint, along with the

PAGE 7 – OPINION AND ORDER

### i. Unpaid Wages

Pursuant to O.R.S. 652.120, on each payday, an employer is required to pay their employees all wages due and owing to them. Plaintiffs allege that travel time to job sites were not included in Plaintiffs' hours worked. ECF 43 at ¶ 3 ("Every day, all of us workers would gather at the shop, get our instructions and supplies, and then ride together to whatever site we were working on. We were not paid for this travel time, nor for the time to return from the site to the shop."); ECF 44 at ¶ 3 (noting same). Under Oregon law, employees are entitled to wages for the time spent commuting between their place of employment and a job site.[6] Here, Plaintiffs have adequately stated a claim for unpaid wages under the statute. The second and third *Eitel* factors are satisfied here.

### ii. Coerced False Time Reports

Pursuant to O.R.S. 652.100, Defendants were prohibited from compelling, coercing, or otherwise inducing or attempting to induce an employee to create, file, or sign documents containing information that the employer knows is false related to the hours worked or compensation received by the employee.[7] Plaintiffs allege that Defendants ordered Plaintiff

---

documents supporting its motion for default judgment, supply sufficient factual content to support a finding [of liability].").

[6] Under Oregon law, "[w]here an employee is required to report at a meeting place to receive instructions or to perform other work there or to pick up and carry tools, the travel from the designated place to the work place is part of the day's work and must be counted as hours worked regardless of any contract, custom or practice[.]" Or. Admin. R. 839-020-0045(3). Similarly, under the FLSA, "[w]here an employee is required to report at a meeting place to receive instructions or to perform work there, or to pick up and carry tools, the travel from the designated place to the work place is part of the day's work, and must be counted as hours worked regardless of contract, custom, or practice." 29 C.F.R. § 785.38.

[7] Plaintiffs' Amended Motion for Default Judgment clarifies that only Plaintiff Durland is seeking to recover penalties for this claim.

PAGE 8 – OPINION AND ORDER

Durland to exclude compensable travel from his weekly hour reports on behalf of himself and his team members. Specifically, Plaintiff Durland attests that he was responsible for tracking employee timesheets and Defendant Straub "told [him] to only record the time starting when [they] arrived at the site and end when [they] left the site." ECF 43 at ¶ 3. Plaintiff Durland protested and told him that this travel time was compensable and that he did not want to sign a false time record. *Id.* However, Defendant Straub still ordered him to exclude the time. *Id.*

This Court finds that Plaintiff Durland has provided sufficient information to support a claim for coerced false time reports under the statute. The record contains enough information for this Court to establish that Plaintiff Durland was compelled to create these false time records and that Defendant Straub knew that the records contained false information. The second and third *Eitel* factors are satisfied here.

### iii. Wrongful Deductions

Pursuant to O.R.S. 652.610(3), Oregon law prohibits deductions from employee wages that are not enumerated in the statute. The Complaint alleges that Defendant Straub Construction "withheld a paycheck from Plaintiff Durland based upon a false allegation that he had taken a draw." ECF 23 at ¶ 4. The Complaint also alleges that Defendant Straub Construction "deducted all or part of the employer's share of Oregon Workers' Benefit Fund assessments from the wages of plaintiffs and the class members, including by failing to reduce the statutory deduction rate when it was changed by the state." *Id.* at ¶ 5. Because this Court also finds that none of the exceptions enumerated in the statute apply, Plaintiffs are entitled to statutory penalties arising from the wrongful deductions. While Plaintiffs admit that this money was ultimately returned to them, this Court is not aware of any authority that would suggest that a defendant can immunize

himself from all liability under the statute by simply re-paying the deduction. The second and third *Eitel* factors are satisfied here.

### iv. Minimum Wage O.R.S. 653.025(1) and 29 U.S.C. § 206

Pursuant to both O.R.S. 653.025(1) and 29 U.S.C. § 206, employees are entitled to be paid for each hour of work that they are gainfully employed, and no employer may pay wages at a rate lower than what is enumerated in the statute. But Plaintiffs have failed to allege sufficient information to sustain their state and federal minimum wage claims. While this Court does find that Plaintiffs have adequately pled that they were not paid for time spent commuting and that they suffered wrongful deductions, this Court cannot determine if this precipitated a situation where a minimum wage violation actually occurred.

Plaintiffs allege in a particularly cursory fashion that they were simply not "paid for their travel time, and this nonpayment means that both plaintiffs were paid less than the minimum wage for their work time in a given pay period." ECF 41 at 16. Plaintiffs plead their claim as if every additional hour for which they were not compensated constituted a minimum wage violation. But both Oregon and federal law use a "workweek method" where a minimum wage violation is determined by totaling the amount paid to an employee in a given pay period and dividing that by the hours worked to see if the rate falls below the standard set by the statute. *See Adair v. City of Kirkland*, 185 F.3d 1055, 1063 (9th Cir. 1999) (holding that under the FLSA, "[t]he district court properly rejected any minimum wage claim the [employees] might have brought by finding that their salary, when averaged across their total time worked, still payed them above minimum wage"); *Chard v. Beauty-N-Beast Salon*, 148 Or. App. 623, 631 (1997) (finding that to prove the plaintiff was not compensated at the minimum wage rate, the plaintiff "was obligated to present evidence showing her total hours worked and her total compensation.

PAGE 10 – OPINION AND ORDER

If the latter divided by the former was less than [the applicable minimum wage rate], [the] plaintiff made a *prima facie* showing of a minimum wage violation"), *overruled on other grounds by Cejas Com. Interiors, Inc. v. Torres-Lizama*, 260 Or. App. 87 (2013).

Further, this Court cannot sift through pages of spreadsheets and pay stubs—some illegible—in an effort to infer whether a minimum wage violation occurred. Plaintiffs had a responsibility to present a clear theory of their minimum wage claims based on a factual calculation of how the wrongful deductions and unpaid travel time dropped their wages below the statutory minimums. Considering that Plaintiffs have already been given an opportunity to shore up the factual sufficiency of the Complaint with their Amended Motion for Default Judgment and the Plaintiffs' declarations in support, Plaintiffs have not satisfied their burden. Thus, without additional information, under this Court's *Eitel* analysis, Plaintiffs' state and federal minimum wage claims fail.

### v. Overtime O.R.S. 653.261 and 29 U.S.C. § 207

Pursuant to both O.R.S. 653.261 and 29 U.S.C. § 207, employers are required to pay time and half for all hours in excess of 40 in a given work week. Plaintiffs allege that they both worked a typical 40-hour work week. ECF 43 at ¶ 6 ("My best guess for any week that I don't have a pay stub for would be that I worked 40 hours on the clock at the site. Our typical on-site day was 8 hours on the clock, and we worked 5 days a week"); ECF 44 at ¶ 4 (noting same). However, that documented time did not include the compensable commuting time that would have pushed Plaintiffs' total hours above the 40-hour threshold. ECF 43 at ¶ 6 ("[T]hose pay stubs only show the time that we were on the clock at the site."). Thus, the additional commuting time not only constitutes unpaid wages, but also overtime. The second and third *Eitel* factors are satisfied here.

PAGE 11 – OPINION AND ORDER

### vi. Unpaid Wages Upon Termination

Pursuant to O.R.S. 652.140(1)–(2), when an employment relationship has ended, all wages earned and unpaid become due and payable to the employee within the period set by the statute. Plaintiffs allege that they ended their employment with Defendants on August 21, 2019 and have yet to be paid for their travel time. ECF 43 at ¶ 2–3; ECF 44 at ¶ 2–3. The second and third *Eitel* factors are satisfied here.

### vii. Conversion and Money Had and Received

"Conversion is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." *Mustola v. Toddy*, 253 Or. 658, 663 (1969). A claim for money had and received is based on the principle that a person or entity should not be unjustly enriched at the expense of another. *Hogan v. Aluminum Lock Shingle Corp.*, 214 Or. 218, 225 (1958). Both claims are premised on the wrongful deductions suffered by Defendants. As explained above, this Court finds that Plaintiff Durland adequately alleged that Defendants took a wrongful deduction from him. However, with respect to the claim of conversion, Plaintiff Durland cannot assert this claim without adequately alleging Defendants' intent to exercise dominion or control over his earned wages. With respect to the claim of money had and received, Plaintiff Durland has adequately alleged that Defendants "wrongfully appropriated the plaintiff's property and were thereby unjustly enriched." *McCarthy v. Tomlinson*, 91 Or. App. 685, 687 (1988). Accordingly, this Court finds that only Plaintiff Durland's claim for money had and received satisfies the second and third *Eitel* factors.

### 3. Fourth *Eitel* Factor

The fourth *Eitel* factor considers the amount of money at stake. *Eitel*, 782 F.2d at 1471.

"[A] large sum of money at stake would disfavor default judgment." *J & J Sports Prods., Inc. v. Cardoze*, No. C 09-05683 WHA, 2010 WL 2757106, at *5 (N.D. Cal. July 9, 2010) (citing *Eitel*, 782 F.2d at 1472). Here, the default judgment requested is more than nominal, but less than that sought in previous cases denying default judgment. *See, e.g.*, *Eitel*, 782 F.2d at 1472 (noting almost $3 million sought in damages as a factor weighing against granting default judgment). This Court finds that the fourth *Eitel* factor favors default judgment.

    **4. Fifth *Eitel* Factor**

The fifth *Eitel* factor considers whether a dispute of material facts is likely. *Eitel*, 782 F.2d at 1471–72. Because upon entry of default, all well-pleaded facts in the complaint are taken as true, "[t]he fifth factor . . . weighs in favor of default judgment when the claims in the complaint are well-pleaded." *Joe Hand Prods. v. Holmes*, No. 2:12-CV-00535-SU, 2015 WL 5144297, at *7 (D. Or. Aug. 31, 2015). "Where the [p]laintiff's complaint is well-pleaded and the defendant makes no effort to properly respond, the likelihood of disputed facts is very low." *3M Co. v. Phx. Auto. Refinishing Co., Ltd.*, CV 17-00649-RSWL-DTB, 2018 WL 1989536, at *5 (C.D. Cal. Apr. 25, 2018) (quoting *Warner Bros. Home Ent., Inc. v. Slaughter*, No. CV 13–0892–DOC RNB(x), 2013 WL 5890682, at *3 (C.D. Cal. Oct. 30, 2013)) (alteration in original). This Court finds that the fifth *Eitel* factor favors default judgment.

    **5. Sixth *Eitel* Factor**

The sixth *Eitel* factor considers the possibility that the default resulted from excusable neglect. *Eitel*, 782 F.2d at 1472. Here, Defendants were properly served with the Complaint and initially responded. ECF 5. However, after Defendants' counsel withdrew, Defendants failed to respond to any attempts by Plaintiffs or this Court to have Defendants participate in this action. Defendants have had ample notice of Plaintiffs' intent to pursue a default judgment, yet they

PAGE 13 – OPINION AND ORDER

have not filed any response. There is no indication that Defendants' default has resulted from excusable neglect. This Court finds that the sixth *Eitel* factor favors default judgment.

### 6. Seventh *Eitel* Factor

The seventh *Eitel* factor involves "the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits," specifically the policy that "[c]ases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. However, "this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action." *Joe Hand Prods.*, 2015 WL 5144297, at *8 (quoting *Joe Hand Promotions, Inc. v. Machuca*, no. 2:13-CV-1228 GEB KJN, 2014 WL 1330749, at *6 (E.D. Cal. Mar. 31, 2014)). Here, Defendants have failed to participate in this case, which "makes a decision on the merits impractical, if not impossible." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). This Court finds that the seventh *Eitel* factor favors default judgment.

## C. Damages[8]

As explained above, this Court's analysis of the *Eitel* factors does not support judgment on Plaintiffs' minimum wage and conversion claims. Accordingly, this Court will only discuss damages as it relates to the remaining claims. Although the Court accepts as true Plaintiffs' well-pleaded factual allegations, the Court does not fully accept Plaintiffs' allegations relating to damages. *See DIRECTV*, 503 F.3d at 854. Plaintiffs must prove the amount of damages. In support of their request for damages, Plaintiffs submitted their own declarations—including

---

[8] This Court does not address damages for the claim for money had and received because Plaintiff Durland does not seek additional damages on this claim. ECF 41 at 38.

paystubs and other financial documents—and a spreadsheet outlining their damages calculation.[9] Plaintiffs do not have complete time and pay records from their employment with Defendants, and Defendants have failed to respond to their discovery requests. Thus, Defendants' failure to participate in this action should not stymie Plaintiffs from proving their damages. *Cf. Constr. Laborers Tr. Funds for S. California Admin. Co. v. United Constr. & Maint. Inc.*, No. 214CV03483DSFSHX, 2015 WL 13915733, at *6 (C.D. Cal. Apr. 1, 2015) (finding that the defendant's "own failure to keep records . . . precluded a more precise calculation [of damages], [and] this estimate [by the plaintiff] suffices to support the request for . . . violations").

On Plaintiffs' unpaid wage claim and overtime claims under O.R.S. 653.055 and 29 U.S.C. 216(b), Plaintiffs ask this Court to award $61,664.70 in overtime damages and $8,640 in penalty wages. Plaintiffs provided a list of the locations that they worked and the additional driving times for which they were not compensated. This Court has reviewed Plaintiffs' calculations and finds that they are entitled to their unpaid travel time multiplied by the payrate in effect for that week—and with overtime earning time and a half. Plaintiff Durland is entitled to $33,061.30 in unpaid wages, and Plaintiff Fritchie is entitled to $28,603.40 in unpaid wages. This Court also finds that under O.R.S. 653.055, Plaintiffs are entitled to a 30-day penalty for violation of the Oregon overtime statute. Accordingly, Plaintiff Durland is entitled $4,560.00 in penalty wages, and Plaintiff Fritchie is entitled to $4,080.00 in penalty wages.

On Plaintiffs' wrongful deduction claims, Plaintiffs ask this Court to award $1022.74 in total damages under O.R.S. 652.615. The statute creates a private cause of action for actual

---

[9] Plaintiffs seek a total judgment of $296,874.22 as of February 14, 2022, made up of $217,408.86 to Plaintiff Durland (with an additional $35.40 in prejudgment interest accruing daily through entry of judgment) and $79,465.36 to Plaintiff Fritchie (with an additional $10.12 in prejudgment interest accruing daily through entry of judgment). ECF 41 at 40.

damages or $200, whichever is greater. Plaintiff Durland is entitled to $822.74, which includes the $622.74 in actual damages related to the deduction from his final check and $200 from the Oregon Workers' Benefit Fund deduction. Plaintiff Fritchie is entitled to $200 from the Oregon Workers' Benefit Fund deduction.

On Plaintiffs' unpaid wages upon termination claim, Plaintiffs ask this Court to award $8,640 in total damages under O.R.S. 652.150. Pursuant to O.R.S. 652.140, Plaintiffs are entitled to their unpaid wages upon leaving Defendants' employ. Because Plaintiffs' wages remain unpaid more than 30 days after their termination, O.R.S. 652.150 entitles Plaintiffs to 30 days of penalty wages. However, this Court has already assessed penalty wages under O.R.S. 653.055. This Court is wary of awarding Plaintiffs a double recovery on a wage penalty theory that is substantially similar to their Oregon overtime claim.[10] Accordingly, this Court declines to award damages on Plaintiffs unpaid wages upon termination claim.

On Plaintiff Durland's coerced false time reports claim, Plaintiffs ask this Court to award $96,000 in total damages under O.R.S. 652.100(2). Pursuant to O.R.S. 652.100(2), the Court may award actual damages or $1,000 for each violation of the coerced false time reports statute, whichever is greater. The same subsection provides that "[t]he court shall count each pay period in which a violation occurs or continues as a separate violation." *Id.* While Plaintiff Durland claims that he is entitled to $96,000 for the 96 pay periods where this violation occurred, this Court notes that O.R.S. 652.100 was enacted on January 1, 2018, and there were nine pay periods before the law came into effect. Accordingly, Plaintiff Durland is only entitled to $87,000 for this claim.

---

[10] This Court also notes that it declines Plaintiffs' request to award separate overtime damages under the FLSA because this would amount to a double recovery.

PAGE 16 – OPINION AND ORDER

In conclusion, this Court finds that Plaintiff Durland is entitled to $125,444.04—including $33,061.30 (overtime), $4,560.00 (overtime penalty), $822.74 (wrongful deductions), and $87,000 (coerced time reports). Plaintiff Fritchie is entitled to $32,883.40—including $28,603.40 (overtime), $4,080.00 (overtime penalty), and $200 (wrongful deductions).[11] By statute, Oregon law also entitles Plaintiffs to 9% prejudgment interest running on all moneys after they become due. O.R.S. 82.010(1)(a).

## CONCLUSION

This Court GRANTS Plaintiffs' Amended Motion for Default Judgment, ECF 41, and awards damages—exclusive of prejudgment interest—in the amount of $125,444.04 to Plaintiff Durland, and $32,883.40 to Plaintiff Fritchie. Taking this Court's ruling into consideration, Plaintiffs are ORDERED to submit a supplemental declaration with their calculation of the prejudgment interest owed on their state law claims.

**IT IS SO ORDERED**.

DATED this 12th day of July, 2022.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge

---

[11] This Court notes that both Straub and Straub Construction are jointly and severally liable for the damages because Straub was a joint employer with Straub Construction. In determining that an owner or officer's economic control over a company made the officer an "employer" individually liable under wage and hour law, courts acknowledge the economic reality that, in such cases, the employment decisions of the business entity are indistinguishable from the employment decisions of individual officers. *Solis v. Velocity Exp., Inc.*, No. CV-09-864-MO, 2010 WL 2990293, *3–4 (D. Or. Jul. 26, 2010); *Cejas Com. Interiors, Inc. v. Torres–Lizama*, 260 Or. App. 87, 103 (2013). And as Plaintiffs note, Straub was the owner, registered agent, and sole manager of Straub Construction. ECF 41 at 32. Straub also gave the Plaintiffs all of their assignments—he told them what time to put on their time sheets, he hired them, he fired them, and he controlled how much they were paid. ECF 43 at ¶ 2.